# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

PAMELA HOOKS                                                                   PETITIONER

v.                              NO. 5:15-cv-00266 KGB/PSH

WENDY KELLEY, Director of the                                                  RESPONDENT
Arkansas Department of Correction

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, the objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

FINDINGS AND RECOMMENDATION

I. STATE PROCEEDINGS. Petitioner Pamela Hooks ("Hooks") got into a physical altercation with her boyfriend, John Davis ("Davis"), during which he collapsed. Hooks called 911 and began performing cardiopulmonary resuscitation on Davis, but he died.

Hooks was charged in an Arkansas state trial court with "murdering Davis in the first degree" and "went to trial on that charge and some lesser-included charges (second-degree murder, manslaughter, and negligent homicide)." See Hooks v. State, 2013 Ark. App. 728, 431 S.W.3d 333, 334 (2013). At trial, the following occurred:

> ... a primary issue was Davis's poor heart health. The forensic pathologist who performed the autopsy, Dr. Charles Kokes, testified that Davis had several preexisting heart conditions, including a main artery that was 90% blocked. Dr. Kokes testified that Davis died of a heart attack that was caused by the stress and physical exertion brought on by his fight with Hooks. Dr. Kokes told the jury that Davis incurred sixty-eight separate injuries—including cuts, scratches, scrapes, and "superficial" stab wounds–to his arms, hands, face, and head. Some of those injuries were consistent with defensive wounds. Dr. Kokes also testified that none of Davis's injuries were life-threatening. "[Y]ou take a healthy individual and inflict the same type of injuries on them, at most, you're probably looking at a trip to the emergency room and some stitches but they would otherwise be alright." The official cause of death was "complications of cardiac arrest due to physical struggle, multiple superficial injuries and arterial sclerotic cardiovascular disease." Dr. Kokes classified Davis's death as a homicide.
>
> The State alleged that Hooks murdered Davis by cutting him with scissors, which caused an increase in Davis's heart rate and blood pressure and resulted in his death. According to the State Crime Lab's tests, scissors that were recovered from the apartment were stained with Hooks's and Davis's blood.

> Without objection, the jury also heard about the couple's prior troubles. Police officer John Alberson testified during the trial that he arrested Hooks in 2008 after he found Davis with several lacerations on his head and his nose hanging off his face. Officer Alberson said that Hooks told him when he arrested her that "she was attempting to kill [Davis] and if she didn't do it, she was going to have somebody do it for her." Hooks testified too, admitting that she had pled guilty to first-degree battery for the 2008 incident that Officer Alberson described. She also described to the jury the events surrounding Davis's death. Hooks said that, before he died, Davis hit her in the back of the head with a skillet and then held her around her neck. She said that Davis's injuries were caused by her grabbing some broken glass and a piece of broken plate and "hitting him blindly" as she tried to free herself. According to Hooks, Davis suddenly stopped fighting and collapsed. When he didn't get up, Hooks called 911 and tried to resuscitate him. Hooks testified that nobody, including herself, knew that Davis, who was sixty years old when he died, had coronary-artery disease. The State offered no evidence that either Hooks or Davis knew about his heart condition.
>
> Hooks also testified about her personal relationship with Davis. She told the jury that she called him "Daddy" and they had an open sexual relationship that sometimes turned violent. Hooks said that she and Davis were fighting over her involvement with another man the day Davis died.
>
> … Hooks moved for a directed verdict on the first-degree murder charge and the lesser-included charges. The circuit court granted her motion on the first-degree-murder charge. The court denied the rest of her motions and instructed the jury on second-degree murder, manslaughter, negligent homicide, and the self defense of justification. The jury found Hooks guilty of committing second-degree murder …

See Id. at 334-335. Hooks was sentenced as an habitual offender to the custody of respondent Wendy Kelley ("Kelley"), the Director of the Arkansas Department of Correction. Hooks appealed her conviction to the Arkansas Court of Appeals. It found no reversible error and affirmed her conviction. See Id.

Hooks then filed a state trial court petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. The petition was denied, and she appealed the denial of her petition. The Arkansas Supreme Court affirmed the denial of her petition. See Hooks v. State, 2015 Ark. 258, 465 S.W.3d 416 (2015).

II. FEDERAL PROCEEDINGS. Hooks commenced this case by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254 and joining Kelley. In the petition, Hooks challenged her conviction and advanced the following three claims: 1) she is actually innocent because she acted in self-defense, 2) the evidence of her intent to commit second-degree murder was insufficient, and 3) her right to a speedy trial was violated.

Kelley filed a response to Hooks' petition. In the response, Kelley asked that the petition be dismissed because Hooks' first and third claims are procedurally barred from federal court review, and her second claim was reasonably adjudicated by the state Court of Appeals.

Hooks filed a reply to Kelley's response. In the reply, Hooks re-addressed each of her claims and attempted to explain why she is entitled to relief. She maintained that Davis died of a heart attack and not as a result of anything she did, and the State of Arkansas failed to prove the essential elements of second-degree murder beyond a reasonable doubt.[1] Hooks also maintained that her right to a speedy trial was violated.

---

[1] In the State of Arkansas, a person commits second-degree murder when she knowingly causes the death of another person under circumstances manifesting extreme indifference to the value of human life or, with the purpose of causing serious physical injury to another person, causes the death of any person. See Ark. Code Ann. 5-10-103.

III. <u>HOOKS' FIRST CLAIM</u>. Hooks' first claim is that she is actually innocent because she acted in self-defense. Specifically, she alleges the following:

> I incurred head wounds, cuts, and bruises, along [with glass ground] in my feet (no shoes) from this attack. Mr. Davis was a strong man and he refused to release me or stop striking me. When I finally broke free he continued to come at me. This continued until he collapsed. The very things he was using to hurt me are what I grabbed to defend myself. Shards of broken plates and scissors. I was fighting for my life. Immediately after he collapsed, I called 911 and began CPR. This is evidence I did not intend to harm/kill him. His heart killed him–not me.

<u>See</u> Pleading 2 at 5.

The state Court of Appeals addressed the sufficiency of the evidence on direct appeal, but Kelley maintains that "its analysis did not focus on the self-defense argument that [Hooks] makes in her current petition." <u>See</u> Pleading 7 at 4 n.3. Because the self-defense claim was not raised in state court, Kelley maintains that the claim is procedurally defaulted. Kelley maintains that Hooks has failed to show why her default should be excused, and the claim is thus procedurally barred from federal court review.

Kelley may be correct. Although Hooks challenged the sufficiency of the evidence on direct appeal, she did not do so on the ground that she acted in self-defense. Instead, she maintained that the State of Arkansas failed to prove beyond a reasonable doubt she repeatedly cut Davis with the purpose of causing him serious physical harm. Rather than determine whether Kelley is correct, the undersigned will simply bypass the procedural bar question and address the merits of Hooks' claim.

"Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See Garrison v. Burt, 637 F.3d 849, 854 (8th Cir. 2011) (emphasis in original) [quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)]. If, in addressing such a claim, the state appellate court made findings of fact, they are accorded deference. See 28 U.S.C. 2254(d). Additionally, a state appellate court's conclusion will not be disturbed unless it was "both incorrect and unreasonable." See Garrison v. Burt, 637 F.3d at 855 [quoting Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010)].

The state Court of Appeals summarized the evidence of Hooks' guilt in affirming her conviction. The Arkansas Supreme Court also summarized the evidence of her guilt in affirming the denial of her Rule 37 petition. It is not necessary to repeat those summaries, save to note the following facts. A police officer testified that Hooks once said she had attempted to kill Davis and would see to it that he was killed. A forensic pathologist testified that Davis incurred sixty-eight separate injuries in the forms of cuts, scratches, scrapes, and superficial stab wounds to his arms, hands, face, and head. Some of the wounds were consistent with defensive wounds. A pair of scissors was recovered from the scene of the struggle, and Davis and Hooks' blood was on the pair of scissors. The pathologist classified the manner of death as "homicide caused by complications of cardiac arrest brought on by the physical struggle with Hooks and arterial sclerotic cardiovascular disease." See Hooks v. State, 465 S.W.3d at 418.

The record reflects that Hooks testified at trial. See Pleading 8, Exhibit B at 000453-000490. She testified that although she was romantically involved with Davis, they had an open relationship and saw other people. On the day of the incident, he confronted her about another man she had been seeing, a man Davis found unacceptable. Hooks claimed that the confrontation turned violent when Davis hit her with a plate and then a skillet. She fell to the floor, at which time he jumped on her back and put his arm around her neck. A struggle ensued during which she admitted striking him repeatedly with broken pieces of a plate and glass. Hooks denied having scissors.[2] At some point during the struggle, he stopped fighting and collapsed. Although she initially believed him to be faking an injury, she soon realized that he was not. She immediately called 911 and began cardiopulmonary resuscitation on Davis, but her attempts to revive him were unsuccessful. He died sometime thereafter. On direct and cross examination, Hooks maintained that she was defending herself from Davis' attack.

After the close of the evidence, the jury was instructed on, inter alia, the charge of second-degree murder. See Pleading 8, Exhibit B at 000719. The instruction provided that the State of Arkansas was required to prove beyond a reasonable doubt that Hooks, with the purpose of causing serious physical injury to Davis, caused his death. The jury

---

[2]When asked about expert testimony that Davis' wounds were consistent with being created by scissors, Hooks said she did not have any scissors, she did not know where the scissors were, she did not know the scissors were found in the kitchen in a drawer, and she did not know how scissors got in the kitchen drawer or how long they had been there. Hooks could not explain how her blood and Davis' blood got on the scissors found in the kitchen drawer. See Pleading 8, Exhibit B at 000471-000473.

was also instructed on Hooks' right to defend herself. The instruction provided, in part, the following:

> Pamela Hooks asserts as a defense to the charge of Murder in the Second Degree that physical force was necessary to defend herself. This is a defense only if:
>
> First: Pamela Hooks reasonably believed that John Davis was using or was about to use unlawful physical force upon her; and
>
> Second: Pamela Hooks only used such force which she reasonably believed to be necessary.
>
> …
>
> Pamela Hooks, in asserting this defense, is required only to raise a reasonable doubt in your minds. Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to her guilt of Murder in the Second Degree, then you must find her not guilty.

See Pleading 8, Exhibit B at 000722, AMCI 2d 704.

Viewing the evidence in the light most favorable to the State of Arkansas, and giving the state appellate courts' findings of fact due deference, any rational trier of fact could have found the essential elements of second-degree murder beyond a reasonable doubt. Hooks' assertion of self-defense justification was a jury question, and the jury could and did choose to reject the defense and convict her. Specifically, the jury could believe that she had previously harmed Davis and had threatened to kill him. Given her use of a pair of scissors,[3] the manner in which she used them, and the number and

---

[3] In her petition for writ of habeas corpus, Hooks states that she did in fact use scissors. See Pleading 2 at 5.

location of the wounds she inflicted on his body, the jury could believe that Hooks, with the purpose of causing Davis serious physical injury, caused his death.

IV. <u>HOOKS' SECOND CLAIM</u>. Hooks' second claim is that the evidence of her intent to commit second-degree murder was insufficient. Specifically, she alleges the following:

> Mr. Davis initiated the attack. He used items to harm me: dishes, pan, and scissors. None of this would have happened if he had not grabbed [me] from behind, [tried] to strangle me, and so. Neither of us knew of his health issue. All of his wounds were superficial. The wounds on his face, hands, and arms were there because I was striking blindly behind myself trying to get free. As the person attacked to begin with, I was responding, defending myself. My only "conscious objective" was survival. He would not stop until–stop fighting–until he collapsed.

<u>See</u> Pleading 2 at 6.

On direct appeal, the state Court of Appeals addressed the sufficiency of the evidence of Hooks' intent to commit second-degree murder. The appellate court applied a substantial evidence standard and rejected Hooks' claim, finding the following:

> Having considered the record as a whole and the caselaw applying the applicable murder statute, we hold that substantial evidence supports the jury's finding that Hooks acted with the purpose to seriously injure Davis. As we stated earlier, a jury may infer criminal intent in light of the surrounding circumstances, including the use of a deadly weapon, the manner in which the weapon was used, and whether it was calculated to cause serious bodily injury. [Citation omitted]. And here, the jury could have reasonably inferred that Hooks intended to seriously injure Davis because she used scissors, an instrument that may be a deadly weapon. <u>See</u> <u>Johnson v. State</u>, 326 Ark. 3, 929 S.W.2d 707 (1996) (holding that scissors, when used to stab someone, were a deadly weapon). The cumulative number of injuries (sixty-eight) gives rise to the inference that she intended serious harm. Some of those injuries were defensive wounds. Most of the

> injuries were inflicted to vital parts of Davis's body, his face and head. And had Davis lived, these injuries may have caused scarring or permanent disfigurement, or at least the jury could have so inferred from the photographs and testimony received during the trial.
>
> We are also mindful that the jury was not required to believe Hooks's side of the story. [Citation omitted]. Indeed, the jury apparently did not because it rejected the lesser charges and her affirmative defense of justification. Also ripe for the jury's consideration and weighing was Officer Alberson's testimony that Hooks told him that she had wanted to kill Davis. Hooks also told the jury that she was in love with another man and that she had seriously injured Davis with scissors before.

See Hooks v. State, 431 S.W.3d at 336-337.

Hooks' claim is governed by 28 U.S.C. 2254(d), which requires a two-part inquiry. First, it requires an inquiry into whether the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Second, 28 U.S.C. 2254(d) requires an inquiry into whether the state court's adjudication of the claim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

Hooks has not shown that the state Court of Appeals' adjudication of her challenge to the sufficiency of the evidence resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Although the state appellate court did not specifically cite federal law, the failure of the appellate court to do so is not problematic for two reasons. First, the substantial evidence standard used by the state Court of Appeals is not inconsistent with Jackson v. Virginia, 443 U.S. 307 (1979). See Dansby v. Norris, 682 F.3d 711, 717-718 (8th Cir. 2012) [reversed on other

-10-

grounds, Dansby v. Hobbs, — U.S. —, 133 S.Ct. 2767, 186 L.Ed.2d 215 (2013)]. Second, neither the state Court of Appeals' reasoning nor result contradict federal law.

Hooks has also not shown that the state Court of Appeals' adjudication of her challenge to the sufficiency of the evidence resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented. The state Court of Appeals could and did find the evidence sufficient, specifically finding that "… substantial evidence supports the jury's finding that Hooks acted with the purpose to seriously injure Davis." See Hooks v. State, 431 S.W.3d at 336.

V. HOOKS' THIRD CLAIM. Hooks' third claim is that her right to a speedy trial was violated. Specifically, she alleges the following: "I spent 18 ½ months in [a] county jail awaiting trial because they set my bond at $1 million [dollars]." See Pleading 2 at 18.

Kelley maintains that Hooks' third claim was never raised in state court, and the claim is therefore procedurally barred from federal court review. Although Kelley may be correct, the undersigned will simply bypass the procedural bar question and address the merits of Hooks' claim.

The undersigned accepts that Hooks spent eighteen and one-half months in custody awaiting trial for Davis' murder. Hooks' claim warrants no relief, though, because she has not shown what caused the delay in her trial. She does not allege, and there is no evidence, that the delay was attributable to the State of Arkansas.[4]

---

[4] Liberally construing Hooks' pro se petition, she appears to also allege that her trial attorney failed to provide adequate representation because he was not prepared for trial, failed to object to evidence of

VI. <u>RECOMMENDATION</u>. Given the foregoing, it is recommended that Hooks' petition be dismissed, all requested relief be denied, and judgment be entered for Kelley. It is also recommended that a certificate of appealability be denied.

DATED this 17th day of December, 2015.

_____
UNITED STATES MAGISTRATE JUDGE

---

Hooks and Davis' past problems, failed to present facts in mitigation, and failed to advise Hooks of plea negotiations. Although three of Hooks' four assertions are likely procedurally barred from federal court review, they warrant no relief. She has failed to allege how counsel was unprepared for trial, why evidence of Hooks' past problems with Davis was inadmissible, what facts counsel failed to present in mitigation, or whether a plea bargain was even offered by the State of Arkansas.